Case number 322-03-G0, Annette Fong, appellant by James Murphy v. Illinois Department of Children & Family Services, appellate by Benjamin Jacobson. Justice McDade was, at the last moment, made unavailable. She will, of course, listen to the oral argument tape and participate in that manner. So with that, are both sides ready to proceed? Yes. All right. Mr. Murphy. Justice Brennan, Justice Hedl, good afternoon. I represent Lynette Funk. Ms. Funk was placed on DCFS's state central register as a person responsible for child abuse or neglect. There is no argument from the DCFS that that does not require due process procedures to be followed. There is also no dispute that the only evidence against her was in the way of an investigative report that constituted hearsay. The only witness that the DCFS provided in the administrative hearing was an individual who was not involved in the investigation. It was not otherwise familiar with the case in any way. May I just ask a question? Certainly. Just because the briefs suggest both, I think, but I want to be sure. Is your complaint that the person who prepared the report was unavailable? Or ultimately, and more significantly, that the children who provided the information in the report were not available? It's both. It's both. So even if the investigator was there and testified, you'd have the same argument? You'd still, yes. I mean, it certainly would be. It might be more nuanced, but certainly the fact that... The same concerns. There's certainly the same concerns. The ability to cross-examine. Yes. All right, continue. It's just that there are two different levels to it that make it more concerning, I think, than if it was just one layer of hearsay. The only questions, and then there's also... So there's an issue with regards to due process by not having a witness available for cross-examination. And then there's also the notice for claring. There are two issues that really the court has to grapple with with regards to the hearsay question. And the DCFS basically says that that issue has been forfeited. Because the only objection at the administrative hearing was based on hearsay. Due process was not mentioned. Cross-examination was not mentioned. But the Illinois Supreme Court, two cases that we cited, has basically said they come from the same tree. They involve the same issue. Supreme Court said the rule against hearsay evidence is founded on the necessity of an opportunity for cross-examination. And again, what do you say as it relates to this opportunity, all Ms. Funke had to do was have her own children come testify, or subpoena her own children, and she elected for whatever reason not to do that? Well, I think in this case, one of the things was you look back to what case was going to be believed that DCFS was going to be put on by the disclosure of what witnesses they had. They said that the investigator was going to be possibly put on, that Robert Funke was also going to possibly be put on. Well, Robert Funke was, is that the son? That's the son, yes. Are you suggesting that she was lulled into a false sense that these people would definitely be produced? I think it's lulled in terms of what the case is going to be against her, especially when you have a list of witnesses and the investigator is not put on. In fact, somebody else from DCFS that wasn't even identified as a witness is put on. And that goes to Ulrich, where there was sort of a lulling in terms of not subpoenaing. The subpoenaing is sort of, that's the out that basically DCFS says is basically, yes, I think at least the way I read it, is yes, we violated her due process rights. We shouldn't have entered the hearsay testimony against her. But she could have remedied that on her own had she subpoenaed these witnesses. To me, it seems that's a dangerous precedent under these types of situations where witnesses have been disclosed. Everything has been disclosed. Do the regulations allow, I apologize, Justice Huffman. No, continue. Do the regulations allow for hearsay evidence? I think the regulations in some degree allow for a certain type of hearsay evidence. The question, though, is still, even if regulations allow it, the question is, does that comport with due process rights as recognized by the Illinois Supreme Court, federal Supreme Court? And time and again, the Illinois courts have said hearsay is insufficient and shouldn't be allowed in administrative proceedings. Now, it gets a little bit nuanced when you're dealing with children also, but that's a reason to have the investigator there to cross-examine them. Mr. Murphy, isn't the investigator just testifying to hearsay? And if she is just testifying to hearsay, why can't somebody else do the same thing? Well, the investigator is testifying to some hearsay, but this sort of goes to what layer of it. But assuming she can testify to hearsay, she's at least testifying to the hearsay of what she heard, what the investigation was. You can cross-examine her on different portions of her own record that seem to have some inconsistencies. They might not have been great inconsistencies, but they're still inconsistencies. Making sure she actually wrote things down. Try to investigate, cross-examine her about how she conducted her investigation, whether she used leading questions, whether she used open-ended questions. Those are the types of things that in other situations, and again, we're talking about the DCFS, that they often get into other types of situations. Deal with young children, where it can actually be perhaps even more problematic than it is in this particular case. So the questions are somewhat broader than in this case, but in terms of the narrowness of this case is you have two different layers of hearsay. You have disclosures of witnesses that weren't followed. And I would suggest that that is a certain lulling and a certain surprise to come into it where you have been told the case is going to be about one thing and then it's going to be another. That then gets also to the notice provision. The administrative judge also ruled based on her not driving a car that did not have a corkboard or breathalyzer in it. That was not part of the notice that she was given by the DCFS, that that could be a basis for sustaining the charge against her. Now, DCFS's position is that's irrelevant because there was enough evidence regarding her drinking. Here's the problem is the DCFS's ALJ's opinion really mixed the two and relied more heavily, I'd say, on the lack of the breathalyzer. Here's what the ALJ said. The appellant's blatant disregard of the safety measure, the breathalyzer, in the opinion of the ALJ amounts to a blatant disregard of her parental responsibility to ensure her children's safety. He didn't make or she did not make that type of direct conclusion with regard to the drinker. And at the end, what she said is based on the totality of the evidence presented, she found that Ms. Funk should be placed on the register. So that notice provision could, and part of it is, it's that notice provision that tells you how are we going to argue the case, how are we going to present the case. Do we put Ms. Funk on and talk about the breathalyzer not being in the vehicle? Now, if you knew that that was a basis for putting her on the register, I think the way that you would approach that case would be entirely different. But the administrative law judge's ruling wasn't simply because she was driving the wrong SUV, the SUV without the bait device. Yes. That in and of itself is, put the children in danger, was neglect such that she should be placed on the register. Wouldn't a fair, I guess this is my question to you, wouldn't a fair reading of the entire ruling be that because she was drinking, she utilized the car without the bait, which, you know, by the way, the same car that she supposedly threw liquor bottles out of when the police were called, that that altogether shows kind of a disregard for the children's safety. She's drinking, she's purposefully choosing the car without the bait device, she's driving the children in that car. You could look at it in one sense and say, oh my gosh, yeah, he just based it on the lack of a bait device in the car and there was no notice. But it seems to me when you look at it altogether, it might be a little more nuanced. I would say it's hard to untangle that bait device from the remainder of it. That is, in only five sentences of the background, it takes up about half of it. In the findings of fact, it is the third finding. In, again, when you get to the basis, ultimate basis for it, the ALJ points specifically to the bait device, lack of it, as being blatant disregard for parental responsibility. Not the drinking. The lack of the bait device is what is pointed out. And then it talks about the totality of the circumstances, which maybe sort of gets more to your argument or your concern. But within the totality of it, it is inescapable that the bait device is what is being focused in on. And cannot be, you know, there are some times where you can say it could have been held if still on A. We don't know that because we don't see that. And that's not where the emphasis is. I think you cannot untangle it in this case. So, to just briefly summarize, we don't think there's been forfeiture. The Illinois Supreme Court has tied hearsay with cross-examination rights together. In this particular instance, the ability to subpoena does not seem to be an appropriate remedy or out because of the way the case was presented. And especially in light of what was disclosed in terms of witnesses. And the notice in this case did not mention the lack of the bait device, but yet that was clearly a part and a significant portion of the ruling in this case. Any attempt to bifurcate when Ms. Funk learned or realized that these witnesses were not going to be present live? There was no attempt to bifurcate to my knowledge. Counsel, I do have a question. And I think, to be fair, I think one of the issues, one of the problems with that is a lot of times we do view these in hindsight hearings. And it is hard necessarily sometimes to make those determinations. But it's a determination that certainly DCFS was aware of beforehand. It would have been aware of that Ms. Williams Flowers had no longer worked for DCFS and was no longer available to DCFS. And there was no indication that I saw on the record that counsel for Ms. Funk was given that information prior to the hearing. You answered my question. Thank you. Mr. Murphy, I'll have an opportunity for rebuttal. Mr. Jacobson. Thank you and may it please the court. Assistant Attorney General Ben Jacobson on behalf of the Department of Children and Family Services. There are three reasons that this court should affirm the director's decision not to expunge the indicated finding and neglect against Ms. Funk. First, Funk forfeited all of her arguments on appeal either by not raising them before the agency or in her opening brief. Forfeiture aside, the director's finding that Funk drove while intoxicated was not against the manifest way to the evidence. And his determination based on that, that she disregarded her parental responsibilities was not clearly erroneous. And then third, the director's reliance on the children's hearsay statements did not violate Funk's due process rights. And I'd like to start, if I may, with the due process and put the forfeiture issues and the merits issues to the side for the moment. Funk received all the process she was due. She did not take advantage of the opportunity to subpoena Williams' flowers or call her children at the hearing, since that seems to be her concern that she didn't have the opportunity to cross-examine any of these witnesses. And that the hearsay statements were of a kind that satisfied due process. And I think that there's perhaps a simplification of the due process rules when it comes to administrative proceedings here. In the administrative context, my colleague is correct that in general, the courts have held that hearsay as in courts of law is not going to be admissible. However, under Section 1040A of the Administrative Procedure Act, the legislature has said that hearsay or any other evidence that would not be admissible before a court may be admissible in an administrative proceeding if it is of the type that reasonably prudent persons would rely on. And in re-Yasmin P, this court held that that requirement in the statute that there be indicia of reliability for the admission of hearsay evidence satisfies the requirements of due process. So here, Ms. Funk received all the process she was due by having the general requirement under the APA that there be these indicia of reliability. And if we look to the specific facts here, there were those kind of indicia. We have three statements by different children that are all almost entirely consistent. Those, and in re-ZC, the court stated that the statements of children in these kinds of neglect proceedings can corroborate one another. So we have these three corroborative statements. There was no indication in the record that any of the children were going to be unreliable witnesses or had a history of unreliability. And then Mr. Owens, who was the area administrator for DCFS, he testified providing foundation for the admission of the investigative report. And he was also familiar with the investigator who prepared that report, Ms. Williams-Flowers, because as the area administrator, he had overseen her work over several years. So, and I think to understand where those indicia of reliability stand, in particular, we can look to In re. Julie Q, the appellate case in re. Julie Q, because there's also a Supreme Court case, but they ended up being about different issues. In the second district, Julie Q, the court held that hearsay statements of a child in an investigator's report in one of these proceedings did not have sufficient indicia of reliability. And that was because it was one child's statement. That child had an undisputed history of unreliability. The, and then the DCFS employee who testified regarding the investigative report had no personal experience with the investigator who had actually compiled it and also provided no foundation for the admission of that report. So as I said, we have kind of the opposite of that here. We have all of these indicators that would make this the kind of evidence that a reasonably prudent person could rely on. And so at the admission point, it's just about whether or not it can be admitted to be considered. And then it's up to the fact finder to determine what weight to give that evidence. There were some discrepancies between the three children's accounting of events. And there was testimony on the part of Ms. Funk as to RF's motivation, potential motivation for making these statements as it relates to the mother. The vaping, marijuana, punishment type thing. Do those raise any concerns in your opinion as it relates to the unavailability of RF or the investigator? Not in this instance, Your Honor. And I think there's kind of two aspects to that. In the first instance is about the inconsistencies. They're pretty minor inconsistencies. One child or two of the children may have stated that the incident occurred on September 27th when in fact it happened on September 11th. And then the other one is that the oldest child, NF, she stated that she felt unsafe being in the car with her mother while she drove while intoxicated. But then even though she had, I can't remember if it was a learner's permit or a license, even though she could have driven, she refused to do so. But these are pretty minor inconsistencies. The overall timeline of events and the major facts are all consistent. They were driving back from a soccer game. She was intoxicated. The middle child, RF, called 911 because she was intoxicated. There was an argument between RF and Ms. Funk. RF then left the car. And after that, he was picked up by one of the other moms from his school. And as well, they were all consistent that there were empty liquor bottles in the car. So those minor inconsistencies don't undermine the overall integrity of the reliability of those statements. What about the testimony of the other soccer mom, the former bailiff, saying that she had a, I can't remember if it was a 10- or 15-minute conversation with mom, pretty proximate to when all this happened, and she detected no alcohol or intoxication, indicia of intoxication? So, again, I think that goes more to the weight that it would be given by the fact finder as opposed to the admissibility. And if we look at the ALJ's decision— Of course, the weighing is a piece of paper, a report, and people not subject to cross-examination versus live testimony. That's correct, Your Honor. But in the end, it is really given to the fact finder to look at all of the evidence that's been presented, including the live testimony from Ms. Funk herself and the other mom, and to take that and weigh what the ALJ thinks it balances against this paper evidence. And with regard to the statement of the mom that she had spoken with Ms. Funk for 10 or 15 minutes, as the ALJ determined, made a specific credibility determination there, that the children, given their long history with the mother and her dealing with alcohol, that they would have a more personal and intimate knowledge of how she conducted herself and what she sounded like and acted when she had been intoxicated. And then there was the—about the inconsistencies again, just to circle back on that and kind of close it out. In re-AP, our Supreme Court said that just because there are minor inconsistencies in this hearsay evidence doesn't mean that it's violative of due process, and that's because it kind of goes to the weight and the credibility that should be given to it as opposed to the admissibility. Can I ask your opinion about a totally different issue? Of course. If the sole allegation for neglect was that mom was driving an SUV without a paid device and, you know, contravention of a court order saying she had to only use a car with a paid device, and the kids were in the car and there was no suggestion of any alcohol, would you stand here and tell us that that would be a basis for neglect and an indicated finding? I honestly don't know, Your Honor. I don't know. What do you think? I mean, it could be. I mean, I think the ALJ presented an argument for how that demonstrates not just bad judgment but a disregard for the safety of the children because that breathalyzer device has been ordered by the court to be in that car to ensure that the mother is not driving while intoxicated. Well, the court order is saying that, you know, we have people who are not allowed to drive because their license is revoked, but we don't typically indicate them if they're not doing anything else except driving their children from the soccer match. Let me ask a separate related question. Of course. Do you think that was a sole basis for the ALJ's finding? I think the ALJ may have made that a separate basis, but again, that doesn't matter because when you're doing, at least especially with due process because you have to show prejudice in order to establish a due process violation, and because the ALJ made an independent finding regarding the fact that Ms. Funk drove while intoxicated with RF in the car and that that demonstrated blatant disregard, and there's been no argument challenging the merits of that finding and that determination, so those stand. And the more administrative review, so the standard review is very deferential on those issues, and those are sufficient to affirm or uphold the director's final decision here. So there's absolutely no prejudice shown from the ALJ's discussion of the breathalyzer issue. And then getting back to the due process issues with respect to having an opportunity to call or subpoena those witnesses yourself. I think ULRIC is distinguishable on its facts. In ULRIC, there had been a continuance of the hearing specifically to allow the officer who had compiled the report that had the hearsay statements, there had been a continuance to allow that officer to testify at the hearing. And they showed up that day, the officer wasn't there, the state decided to move forward, and that was what lulled the party there into believing that they were going to have this chance to cross-examine that witness and to not exercise their authority or their power under the relevant regulations or statute to call the witness themselves. And in addition, there was also the fact that in the administrative report itself, the officer's name was listed incorrectly. So there was that additional hurdle if the party had wanted to try and subpoena that officer and may not have been able to at all. Whereas here, the Williams-Flowers and RF were both listed as potential witnesses at the pre-hearing conference, and there was still an opportunity to ask for a continuance and subpoena those witnesses on the day of the hearing if that was what Ms. Funk really wanted to do. And the cases are clear that where you have that opportunity, where the process is provided to subpoena those witnesses, if you don't take advantage of that process, then your due process rights are not violated. You have received all of the process that you are due and that is exactly what we have here. She had that opportunity to call those witnesses. She didn't take advantage of it, and she received all the process she was due. So as it relates to that argument, if she would have asked for a continuance to subpoena the witnesses and was denied that continuance, you would concede that that would have been a violation of due process? Quite possibly, Your Honor. At the very least, it would be a much stronger argument because she would have tried to take advantage of the process and been denied the process, whereas here there was no attempt to use the procedures at hand. Speaking of the process, Yes. I'm not familiar with the rules of discovery of what sort of exchange of witnesses and otherwise at this level, nor am I illuminated by the papers here. So I guess that answers my question. If it's not in the record, it's not in the record. It's not in the record, but I would be happy to tell you what I know off the top of my head, but I don't want to go outside the record if you don't want me to. I'll leave that to you, Counsel, or Justice Brennan. I don't believe it would be appropriate. Any additional remarks? Oh, your time's up. Yes. Mr. Jacobson, thank you. Thank you very much. Mr. Murphy, we're both. Just very briefly, I think you pointed out there is, I think, a difference between having a piece of paper and a live witness with regard to the ability to cross-examination. You simply cannot cross-examine a written report. Again, I would ask that you go back with regard to the issue of notice in the back to go back to the ALJ's opinion, even just at the beginning of the analysis. The ALJ starts, the appellant does not dispute that on the day in question she drove her second vehicle that did not have a breathalyzer device. The appellant does not dispute that by doing so, she was in violations of a sentencing provision entered under a prior DUI case. That's the lead. That's the conclusion. It's what was continually pointed out, separate, and emphasized far more than the drinking at the time of the day. It is one of the situations I don't think you can untangle the two. Thank you. We thank both sides for a spirit of debate. We will take the matter under advisement and render a decision in due course. Thank you so much.